OPINION
{¶ 1} Defendant-appellant, Carlton Evans, appeals a $9,519.23 judgment in the Franklin Municipal Court in favor of plaintiff-appellee, Quantum Capital Ventures, LLC. ("QCV").
 {¶ 2} In 2001, QCV filed a complaint against appellant and Oak Hills Bank (n.k.a. Towne Bank) seeking to recover funds improperly withdrawn by appellant from QCV's account at Oak Hills Bank. QCV settled its claims against the bank for $10,000 immediately prior to trial, leaving appellant as the sole defendant. A bench trial held in August 2002 revealed the following facts:
 {¶ 3} In the summer of 1999, following numerous meetings, Paul Nagy, Thomas Reichl, David Reichl, and appellant agreed to enter into a business venture for the purchase of real estate to be rehabilitated and resold. The business venture was to be composed of two limited liability companies and one corporation, all formed in the state of Nevada for favorable tax treatment purposes. Their intent was memorialized in an agreement (the "initial agreement") dated August 6, 1999 and signed on August 17, 1999. The agreement provides in relevant part that:
 {¶ 4} "It is agreed that [appellant], Tom Reichl and David Reichl will each contribute * * * $35,000.00 in cash for a * * * 25% ownership of the business venture. Paul Nagy will contribute organizational and operational services valued at and for an equal share of * * * 25% of the total business venture. * * * In the event the business does not go forward, all remaining funds above or below * * * $100,000.00 shall be returned to [appellant], Tom Reichl and David Reichl. It is agreed that we should proceed with this venture immediately, time being of the essence. Until the business is formally, legally and officially structured[,] no decisions or actions will be taken without the full consent of each of the four participants in this venture."
 {¶ 5} The two limited liability companies, including QCV, were filed of record in Nevada on August 11, 1999. On August 20, 1999, the four individuals entered into and signed a written operating agreement setting forth their duties and obligations as QCV's members/managers. Pursuant to their initial agreement, Thomas, David, and appellant each deposited $35,000 into a business account at Community National Bank. On September 30, 1999, due to more favorable banking terms, the funds were withdrawn from Community National Bank and deposited at Oak Hills Bank, where two accounts were opened, one with $90,000, the other with $15,334.76. The parties agreed, and it was made clear to them that two signatures were required to withdraw any funds.
 {¶ 6} In addition to his initial contribution of $35,000, appellant had also advanced $2,820 in expenses. The four members agreed that appellant would be reimbursed for those expenses. In furtherance of the business venture objectives, Thomas and appellant looked for favorable prospects of real estate to buy. Two proposals were made by appellant, however no purchase occurred. On October 1, 1999, Oak Hills Bank agreed to loan $100,000 to QCV. The loan was raised to $350,000 two weeks later.
 {¶ 7} Meanwhile, as a result of the slowness in starting the business and concerns over Paul's honesty, appellant decided to withdraw from the business venture. On October 8, 1999, during a heated telephone conversation, appellant notified Paul of his intent and advised him he wanted his money back. On October 11, 1999, appellant unilaterally withdrew $37,820 from QCV's account at Oak Hills Bank. It is undisputed that the withdrawal was made without the required two signatures, without telling the other three members, and without their consent. Following an exchange of letters between appellant and Paul, the four members met on October 20, 1999. At that meeting, appellant confirmed his intent to withdraw from the business venture. He received a $2,820 check as reimbursement of the expenses he had previously paid. Appellant did not tell the other three members he had withdrawn $37,820 from QCV's account. That fact was discovered by Paul after the meeting.
 {¶ 8} Despite efforts to convince appellant to redeposit the $37,820 into QCV's bank account and proceed with a withdrawal pursuant to the operating agreement, appellant refused to do so. QCV subsequently filed a complaint against appellant and the bank alleging breach of contract, conversion, breach of fiduciary duty, and impairment of business investment opportunity and reputation.
 {¶ 9} On January 28, 2003, the trial court granted judgment in favor of QCV in the amount of $9,519.23. The trial court found that appellant unilaterally withdrew $37,820 in violation of the operating agreement, and that the withdrawal exceeded appellant's interest in the business venture at the time by $9,519.23. The trial court declined to grant a setoff for the $10,000 QCV received as a result of its settlement with Oak Hills Bank. This appeal follows.
 {¶ 10} In his sole assignment of error, appellant argues that the trial court erred by ordering him to pay $9,519.23 to QCV.
 {¶ 11} Appellant first contends that the trial court's finding he violated the operating agreement by unilaterally withdrawing $37,820 is against the manifest weight of the evidence. Appellant asserts that he had the authority to withdraw the money under either the initial agreement or the operating agreement.
 {¶ 12} Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. SeeC.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279. A reviewing court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the trial court's findings of fact and conclusions of law. See Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77.
 {¶ 13} In addition, a reviewing court is guided by a presumption that the trial court's findings of fact and conclusions of law were correct. Id. The underlying rationale of giving deference to the trial court's findings rests with the knowledge that the trial court was best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the testimony. Id. See, also, Myers v. Gibson, 66 Ohio St.3d 610,1993-Ohio-9.
 {¶ 14} Appellant asserts he had the authority to withdraw the money under the initial agreement because the business venture had not gone forward. We disagree.
 {¶ 15} In its decision, the trial court found that the business venture had been formed: "two limited liability corporations were formed along with a regular corporation under the laws of Nevada in accordance with the earlier discussion of the parties. All parties executed an Operating Agreement, deposited the capital contributions * * *, and began an initial search for properties to purchase." In fact, appellant himself brought two proposals to the members. The trial court also noted that "loan requests had been made to Oak Hills Bank, utilizing the capital deposited to obtain a commitment of loans * * * for future investment potential." Upon carefully reviewing the record, we agree with the trial court's foregoing finding. Notwithstanding appellant's assertion, the business venture had gone forward.
 {¶ 16} Even assuming arguendo that it had not, we nevertheless find that appellant had no authority under the initial agreement to withdraw the money for the following reasons. First, while the agreement provides that funds are to be returned to appellant, Thomas, and David if the business does not go forward, it does not authorize a unilateral withdrawal. Second, it specifically requires that "[u]ntil the business is formally, legally, and officially structured[,] [which appellant denied it was], no decisions or actions will be taken without the full consent of each of the four participants in this venture." It follows that appellant had no authority under the initial agreement to unilaterally withdraw the money.
 {¶ 17} Appellant also asserts he had the authority under the operating agreement to withdraw the money. Again, we disagree.
 {¶ 18} The trial court found that appellant, "in violation of the Operating Agreement, unilaterally and without notice to the other members of the business venture, withdrew his [$35,000] capital contribution and the [$2,820 in] expenses which he had previously advanced[.] There is no dispute that [appellant] was entitled to recovery of his expenses which was agreed to by all the members. Although a member may withdraw from the business venture, an individual member was not authorized to withdraw funds without agreement of the other members. Section 20.3 of the Operating Agreement[1] indicates' the members shall not have any right to demand or receive property other than cash upon dissolution and termination of the company or to demand the return of their capital contributions to the company prior to dissolution and termination of the company.'"
 {¶ 19} Upon carefully reviewing the operating agreement, we agree with the trial court that appellant violated it by unilaterally withdrawing the money without the consent of the other three members. In addition, there are no provisions in the operating agreement allowing a member or a manager to unilaterally withdraw funds for the member's or manager's sole benefit, as was the case here, rather than for the company's benefit. Appellant, therefore, had no authority to withdraw the money under the operating agreement.
 {¶ 20} Appellant, next, challenges the amount of the judgment against him. Appellant first asserts that the trial court relied upon an erroneous calculation of damages in determining that the withdrawal of his capital contribution left QCV with a shortage of $9,519.23. Appellant contends, without any explanation or calculation, that the total debt created by his withdrawal was only $3,551.70, and that as a result, he is only liable for one-fourth of the debt, or $887.93. Appellant also asserts that the trial court erred by not granting him a setoff for the $10,000 QCV received as a result of its settlement with Oak Hills Bank.
 {¶ 21} The trial court relied upon the undisputed testimony of Candice DeClark Peace, the accountant for the business venture, in its calculation of damages suffered by QCV. According to Peace, the value of each member's interest on the day of the withdrawal was $25,480.77. The figure was calculated by adding interest income ($474.77) to the members' initial capital contributions ($105,000) and subtracting expenses of the company ($3,551.70). The resulting number, $101,923.07, was then divided by four to represent each member's 25 percent share in the venture. When appellant withdrew $37,820, even though his interest at the time was only $25,480.77, it resulted in a shortfall to QCV of $9,519.23. Based upon the accountant's undisputed testimony, we find no error in the trial court's calculation of the damages suffered by QCV.
 {¶ 22} With regard to the setoff claim, the trial court found that there was "no basis for an off-set of the funds received by [QCV] from Oak Hills Bank as a result of a settlement [between QCV and the bank]. In the Complaint it was alleged that * * * Oak Hills Bank was negligent in permitting the withdrawal of funds and, as a result thereof, it impaired the ability of [QCV] to obtain investment and resulted in damage to reputation of [QCV]. The allegations directed towards [appellant] concern a breach of contract and the inappropriate withdrawal of funds by [appellant] in violation of the Operating Agreement." QCV's claim against the bank was clearly separate and distinct from its claim against appellant. We therefore see no error in the trial court's refusal to grant appellant a setoff for the $10,000 QCV received as a result of its settlement with Oak Hills Bank. Appellant's assignment of error is overruled.
Judgment affirmed.
Powell and Valen, JJ., concur.
[1] Appellant asserts that Section 20.3 must be read in pari materia with the initial agreement, and that since the business never went forward, he could not have violated Section 20.3. Our response is two-fold. First, unlike appellant, we found that the business venture had gone forward. Second, Section 23.1 of the operating agreement clearly provides that the operating agreement "supersedes any prior agreement or understanding among [the parties] relating to the subject matter hereof, and it may not be modified or amended in any manner other than as set forth herein."